Good morning, Your Honor. And may it please the Court, my name is Michael Fish. I represent the petitioner. I'd like to begin this morning by addressing why the Board was required to consider our points about the nature of the Regulation O violations, about what was happening in those transactions. And what is your evidence that they didn't consider it? I'm sorry, Your Honor? Why do you think they didn't consider it? Because the findings and the decision that the Board rendered on remand does not refer to any of them. For example, one of the There's a paragraph, it says, The final major issue addressed by the ALJ involved the effect of respondent's misconduct for each transaction. And then it goes on to say, essentially, that that effect doesn't matter. Well With respect to their, their, their conclusion is that, that the, the economic benefit is not pertinent to their decision because they don't, they don't think it's, it will change the result. Are you talking about, I'm not sure which transaction you're talking about. If you're talking about the collateral substitution transaction, that's something different. There are eight Regulation O violations that form the crux of this order. And as we pointed out in our briefing, and as we pointed out to the Board on remand, when you look at those transactions, several, four of them, in particular, resulted in a benefit to the bank and were profitable. One of them, the NEI transaction, added an additional debtor to an existing loan. And so our point was, and is, that if you're going to consider banning a person for life from a business, you have to look at the nature of the transactions to determine, is this person a threat to the, to the bank, its depositors, or the federal insurance system? I'm not sure I follow this theory that because something turned out to be a benefit, that that makes it right from the beginning. I think the basic question is whether it's an extreme violation in the first place. Whatever it turned out to be, it might have turned out to be something different. Actually, not, Your Honor, not one, not one of the eight Regulation O violations cost the bank a penny or resulted in loss. So we're just going to say bank directors can do anything they want to as long as they make money? No. What we're talking about is the prohibition for life. There are many levels of sanction or penalty which could be imposed in the exercise of discretion short of banning a person from a business for life. And so our point is, when the board is exercising its discretion to impose the administrative equivalent of the death penalty, it needs to examine not just was there a violation? Yes, that's already been determined. But the board needs to look more, what was the nature of the conduct that led to the violation? And if the nature of the conduct, for example, one of the incidents, Your Honor, a Regulation O violation where an additional debtor assumes an existing obligation and Mr. De La Fuente is kept on as a personal guarantor. Now someone needs to explain to me, because I don't understand, how that puts the bank, its depositors or the insurance system at risk. The board never explains that. Another loan, Your Honor, a 1.3 million — That's the question. That's the question that was essentially already decided by the Ninth Circuit, no? No, Your Honor. It wasn't at all. What — let's go back for a minute to a fundamental — So whether there was a violation, that was decided by the Ninth Circuit? Yes. Okay. But what is the appropriate penalty for the violation has not been decided by the Ninth Circuit. And this is a very important point that's easily overlooked. Just because there's a violation of 1818E doesn't mean that the FDIC board is required to impose a life sentence, a lifetime ban. Talking about what they're required to do, we're talking about what they, in their judgment, couldn't do. And certainly in their judgment they can, but the Administrative Procedure Act says if you're going to do that, you must address the main points that the petitioner argues. And if you look at the main points that we argued in our papers to the board on remand and compare that to the decision they rendered, they ignored all of our main points. All of them. Not just the $700,000 that turns out not to be a loss, but we went through every single Regulation O violation, all eight of them. And we said, look, are they violations? And I conceded in my reply brief, yes, they're violations. But look at what this man did. Does it warrant a lifetime ban? And they don't respond to that. Which was very specific with regard to the financial benefit argument in footnote 11 of the second opinion, was that the argument is unpersuasive because the fact that he was able to obtain these loans is enough of a benefit. So that's their conclusion. They reviewed it and that was their conclusion. How do we do anything about that? Because that's their conclusion as to one transaction. No, listen. I'm sorry. Argues that many of the transactions in question do not ultimately result in a financial benefit. It was a generic discussion and he basically And the conclusion was that the financial benefit question, in the way you were posing it, was not, to their view, pertinent to whether he should be barred from life. They addressed the question. That – well, two points, Your Honor. One, I believe that's in respect to the effects prong of 1818e. And they say the requisite impermissible effect exists because of the benefit. That's irrelevant to the point we're making is, what is the culpability of this man and does the culpability of the transactions suggest or require banning him from life? And we put that on the table to the FDIC board as – with respect to every single one of these Regulation O violations. And their decision, Your Honor, is completely silent. There is – Are you talking about new evidence you submitted or are you talking about your argument? I'm sorry. The Regulation O argument does not involve any new evidence. Every single one of our – every single one of our arguments as to the eight Regulation O violations comes directly from adjudicated facts in the record. Now, this Court found a shocking disregard of sound banking practices, the fact that he used this bank as his personal piggy bank, right? Yes. The Ninth Circuit's already said that. So we know he's in shocking disregard of sound banking practices. And it looks to me like the board thought it was pretty shocking, too. Well, the board did find that, Your Honor, but the board didn't consider the points that we made. Look, when – the result that the Ninth Circuit rendered before was based on a record that this man represented himself. And that's unfortunate because when you look at the evidence in the record – this is not new evidence – the evidence in the record that we cite as to what he did and you look at the effect on the bank, it's difficult to reach that conclusion. Let me give you an example. If I embezzle money from my employer and put it on the lottery and I win and give all the money back, the effect on my employer is zip. Have I done something wrong somehow? Your Honor, I'm not disputing that something – Maybe should my employer fire me for being an embezzler, maybe? There's two points. Number one, I'm not disputing that findings of liability existed. Now we're talking about punishment or penalty. That's what I'm talking about. I'm talking about punishment and penalties. So now I've been embezzling from my employer for ten years and I always put it back because I'm great at the lottery. And before he ever catches me, all the money's back. That analogy is – So he's not hurt. The employer wasn't hurt. That analogy is flawed in this case, Your Honor, because when you – let me give you an example. One of the Regulation O violations is a violation where Mr. De La Fuente had an $800,000 loan and an additional debtor, National Enterprises, assumed that obligation. That doesn't sound very much like embezzlement to me. What that sounds like is an additional – I didn't say it was embezzlement. We are talking about an analogy. It's a – What he did was shockingly treat the bank as his own piggy bank and did whatever he felt like despite the regulations. And the board thought that really was pretty shocking. It required a high penalty. Here's why that – Even though things might have come out okay in the long run. Yeah, you can roll your eyes. But even though it came out all right in the long run – Your Honor, he had eight violations. Let me please finish with respect to the National Enterprises transaction because it's very indicative of all of them. Now, someone from the FDIC needs to explain to me how adding an additional debtor is anything close to embezzlement when you add an additional source of payment and you keep him on as a personal guarantor. Now, we put that issue before the board on remand. We said, Board, if you're going to ban this man for life, tell us why that conduct, which has not justified banning him for life from banking. That is not addressed in their order. And the standard review requires them to face up to these facts. Do you think that they're required to show that each of the eight violations justifies banning him for life? And do you think that this court should substitute its judgment for the FDIC on a situation that went on for a long period of time? Absolutely, they're required to face up to the arguments and evidence that we've presented. It's not new evidence. Evidence in the record is to the nature of these violations. Let me see if I can pierce your argument. Are you arguing that they didn't consider it? Are you arguing that they did consider it, but they abused their discretion in doing so? They didn't. They abused their discretion by not addressing the points we raised. Well, they addressed it in the general way that I read you. Is that inadequate? No, that's inadequate because they didn't address them. For example, Your Honor, what you described addresses at most four of the transactions, the four loans to Fine Particle. Because those are the ones where the Fine Particle comes in and buys bad assets from the bank to improve the bank's status. That describes four of them. But what about the others? What about what turns out to be a fully secured loan to Rancho Vista Del Mar? We asked the board to address that. They didn't. What about adding National Enterprises as an additional debtor? We asked the board to address that and tell us why does Mr. De La Fuente deserve to be banned from banking for life because he got someone else to pay the loan and he stayed on as a personal guarantor? Tell me why that is so horrible, because we don't understand it. They didn't. We said with regard to the collateral substitution transaction, here's evidence that there was no loss. Tell us why there still is justifiably Let's suppose we send it back to them to consider those four situations that you suggest. Do you think the result would be any different when they finished? In other words, is it only four that are justifiable? And I just don't follow your argument. Well, it's not harmless error. The agency is required under the applicable standard of review to address the issues we put before them that are relevant. If it's so easy to ban this man for life based on the arguments we made, then make them. But they didn't. At most, in a very oblique way, they dealt with less than half of the issues we put on the table. I'm having a hard time understanding that point, why this wasn't a general statement. That the fact that he was able to obtain loans to his related interests with regard to regulatory limitations was enough of a benefit to satisfy the effects test under Section E, and therefore, there's no reason why the financial benefits should matter. Well, there's because That's what they're essentially saying is you're saying there wasn't a financial benefit to him, but they're saying there is in the sense that they understand financial benefits. I'm not making myself clear. No. Okay. That part of their decision, when you look and see how their decision is laid out, they reexamine and make new findings on the three elements that have to be proven under 1818E, a wrongful act, wrongful effect, culpability. Okay? What you just read to me, Your Honor, is their findings as to element number two, whether a prohibited transaction occurred because of a wrongful effect. Fine. They made that decision. I'm focusing on a completely different issue. I'm focusing on the issue there is a violation. A violation of Regulation O and a violation of 1818E doesn't automatically mean you get banned from banking for life. Do we all agree with that? I mean, even they agree with that. They have to exercise their discretion based on the nature of the violation. My argument ultimately as to why they shouldn't have done it is that there was no financial benefit to him. My argument is in assessing the penalty, we're not talking about was there a violation. I understand that. In assessing whether the penalty you're saying there wasn't a financial benefit. That's right. In assessing his culpability, I'm saying the bank benefited from every single Regulation O transaction. Every single one. There was no loss. Not one penny was lost. And what I'm saying is when you're choosing the penalty to impose on this man for violating Regulation O, you need to take that into consideration. That's what I'm saying. You need to take that into consideration. That's a different argument. That's an argument that's an essentially an abuse of discretion argument on the merits, saying they had to give this effect even if they chose not to. They have to look at the evidence, the issues. The question is what's the authority for that? What's the authority for the fact that they have to take into account that they are legally required to give positive weight to the fact that the bank was not financially benefited even if he was found guilty? I don't have authority that specific. But what I do have authority for is cited in the brief that the Benno or Beano. I don't know how to pronounce it. It's the case Benno v. Shalala that lays out the standard of review for this court in very similar context, a ban from banking for life. And what it says is the decision of the FDIC will be reversed where there's no mention in the record the agency considered a relevant factor or important points pressed by the petitioner. And all I'm saying is this, Your Honor. When you look at the record, the brief we submitted to the FDIC on remand, and we laid out, look, folks, here's what happened in those transactions. Please consider that it didn't cost the bank a dime. Please consider that when you determine whether to ban this man for life from this occupation. And their decision ignores all of it. And the best you can say is there's an oblique reference to some of the evidence on a completely different issue, which is whether there was a violation to begin with. That's our point. And, you know, if they're going to ban this man for life, they at least have to face up to the podium and look at the evidence we submitted and the arguments we made and say, Fish, you're wrong. Here's why. They didn't do that. When they obligated you to look at your new evidence as opposed to take a brief. Okay. Let me answer that directly. In this case, yes, but let's be clear now. As to the eight Regulation O violations, the overwhelming majority of this case, we're not talking new evidence. Every argument we make is based on findings in the record. There's only one piece of new evidence. And the new evidence is on the collateral substitution transaction. It turns out long after the hearing was over, the bank suffered no loss. Now, here's why I think that's properly admissible in this situation. Number one, they never objected. We put it in. There's no motion to strike. There's no objection. There's nothing in the decision by the board that says we're not considering it and here's why. Secondly, they issued an order that uses the phrase, we're reopening the record to make certain legal determinations. Now, the board certainly has discretion to reopen the record if it wants to. And it told us it was to make legal determinations. And legal determinations have to be based on some kind of facts. So we interpreted that statement broadly. It's ambiguous. And we put that evidence in and they never objected. There's no motion to strike. So in this case, either they have to consider it, which they don't. That's an abuse of discretion. Or they have to tell us why they're not considering it. They didn't do that either. And if that's going to be their reason, they have to do it principally and reasonably. They didn't do that. It's just not there. And that's an abuse of discretion under the standard of review stated in the Kim case and in the Benno case. So, you know, what's happening to this man is very serious business, banning him from an occupation for life. And all we're saying is, yes, there's violations. That's been adjudicated. But you just can't sweep, oh, he violated something eight times and it was $6 million, so throw away the key. That's not what they're supposed to do. They're supposed to look at what he did, exercise their discretion. We told them, here's the evidence of what they did, what he did. Let's see. They certainly looked at the evidence of what he did. I mean, they went over mitigating factors and they said they weren't technical violations and so on. So you're making an additional argument, which is they had to look at the effects of it. No. They had to look at it. They didn't look at what he did, Your Honor. I don't mean to sound so challenging, but there's nothing in that decision that says, in one of the prohibited transactions for which we're banning him for life, he stayed on as a personal guarantor and put another debtor on the hook. That's not there. How about one of the transactions for which we're throwing away the key was a loan for $1.3 million, which was paid back in six weeks. Where's that? I don't see that. How about one of the loans was to him for $800,000. It was paid back and it was secured by over $1 million in real estate. I don't see that in there. We laid all of this out in our briefing in painstaking detail based on evidence in the record, not new evidence. And I'm saying before you lock the door to the bank, they have to step up to the plate and say, here's why he still deserves to be banned. Here's why what the Ninth Circuit said before still holds. And they didn't do that. This man deserves that before he's thrown out of the bank. You make a strong argument. Thank you. Thank you, counsel. May it please the Court. I'm Scott Watson on behalf of the FDIC here. And in conformity with the Court's injunction to try and keep this short, I'd like to address just two points, if I can. The first is that the FDIC did comply with both the letter and the spirit of this Court's remand in its original order, and didn't abuse its discretion, and indeed did consider all of the arguments that were made by Mr. De La Fuente. And the second point I'd like to reach is just that while it's an extraordinary sanction in this case, this is not an extraordinary application, and this Court should affirm. Mr. Fish's principal argument is that the Board did not consider his arguments regarding Regulation O. And as you pointed out, Your Honor, in footnote 11, the FDIC very specifically addressed them. It said that he argued that many of the transactions in question did not ultimately result in a financial benefit to himself, and in certain instances benefited the bank. The very arguments that Mr. Fish has made here today, the FDIC did address them. It explained why, even if that were true, the benefit that Mr. De La Fuente had had, in essence, the one described in that footnote, had existed, and that that alone was sufficient to find the effect, to find the necessary effect in this case, and that that was what the Board was basing its decision on. Mr. Fish's complaint, essentially, is they didn't reiterate that argument later in a discussion of the penalty, but that wasn't really necessary. The statute lays out three elements in order to go ahead and impose a lifetime sanction. Congress created the elements. The first is misconduct, and that's really not at issue in this case. The second is effect, and there are three separate disjunctive possibilities. If any one of them is satisfied, then the appropriate penalty is a lifetime prohibition. That would be a benefit to Mr. De La Fuente, or a loss to the bank, or prejudice to the interest of the depositors. The FDIC explained in its response to their submission why it was not going to focus on the potential benefits to the bank, even if they existed, because those were not the element that it was basing its decision on. Rather, it was the benefit to Mr. De La Fuente. And having made the analogy to the death penalty, I can only use my own analogy. If a death penalty were an appropriate penalty, as civil statute said, it's an appropriate penalty if the murderer conducted cruel torture of the victim, or the victim was a police officer. And there was cruel torture of the victim in this case, but he was not a police officer. Mr. De La Fuente's argument that this was not a police officer would be immaterial. The statute still would have been satisfied, and the penalty would be appropriate. The only abuse of discretion argument that's really offered by Mr. De La Fuente here is that the board didn't consider it, the FDIC's board, and that's simply not true. It was considered here. And indeed, each of the elements, it reiterated, when I say that it observed the letter in the spirit, it reexamined what each of the elements was, what the basis of its decision was, and what had been affirmed by this court in the earlier decision. And that was the predicate for imposing this penalty. It considered the arguments, but it rejected them. It explained that Mr. De La Fuente, by treating this without ever giving a thought to lending limit restrictions, approval requirements, collateral requirements, reporting requirements, and other statutory and regulatory requirements created to protect depositors from just these abuses, that he had acted in that way and received that benefit. And just because he took the money and it ultimately didn't result in a loss, if that were the case, it's immaterial. And I would suggest that the analogy to an embezzlement, even if the person then went out and hit the lottery or had inside information on a horse and came back and repaid it, that the wrong occurred when he went ahead and violated Reg O. Similarly, the collateral substitution and PCA transactions were also transactions where each of the three statutory elements was met. I suppose the difference between this and the lottery could be said to be that although, and I understand the submission, although he violated the regulations, he knew enough about the people he was dealing with that he understood there really wasn't going to be a risk to the bank. And it wasn't just a lottery and it wasn't just gambling. And it was, therefore, the ultimate question should be did he endanger the bank, and he didn't. Well, first of all, Your Honor, I would respond that Congress hasn't asked if the ultimate question is whether he endangered the bank. Congress has asked, the ultimate question is did he confer a benefit on himself that was inappropriate. Oh, yes, he did. And if he had not received a benefit, did he endanger the bank? Or if he didn't do that, did he prejudice the interests of depositors? Congress set this up for the FDIC to make one of those three determinations. The FDIC indeed addressed all of them and did address the points that were raised by Mr. De La Fuente. And accordingly, there was not an abuse of discretion here. What I would also like to just point out, when I say that this is an extraordinary sanction, this court recognized that in its earlier decision. But this is not an extraordinary application. In the continuum of violations, the cases that we offered, which include the Greenberg case, the Hatensky case, the Profitt case, that was the focus of the earlier decision of the Ninth Circuit in this case, all of them looked to violations like this. In the Greenberg case, again, there was insider violations of Reg O. In that case, the regulator was the Fed. It isn't just the FDIC that imposes these penalties. And it was determined that that kind of insider trading to oneself and conferring that benefit was sufficient to find a lifetime prohibition was appropriate. In the matter of Hatensky and in this FDIC decision, the FDIC explained again that failure to impose a lifetime prohibition would harm the deterrent effect that's sought by the statute. So not only was this not an abuse of discretion, but the FDIC explained why a lifetime prohibition was appropriate. If there are no further questions, we would respectfully ask the Court to affirm. Thank you very much. Thank you. Do you have a minute or so? Okay. I'll give you a minute. Go ahead. Twenty. There's an important distinction here that is confused by the FDIC's argument. There's a distinction between all the three elements of 1818E being established and then the appropriate penalty for that violation. We understand that. Okay. We're only talking about the penalty. And secondly, the case law is clear as to the standard of review of administrative decisions. The administrative agency is obligated to address the main points or objections put forth by the petitioner. They didn't do that. And so it's not the fact that all the elements line up. That doesn't insulate their decision from appellate review. The question is, before you ban this man for life, did you address the arguments we made as to the nature of the Regulation O violations? And when you look at what he did, a lesser penalty may have been appropriate and would have been appropriate, but they failed their obligation by not addressing that. That's the problem in the case. Thank you very much, counsel.
judges: Fernandez, Berzon, Panner